24 C.C.P.A.(Patents)

## In re FERRIS.
### Patent Appeal No. 3825.

Court of Customs and Patent Appeals.
June 21, 1937.

T. Wallace Quinn, of Washington, D. C. (Theodore S. Kenyon and Edgar F. Baumgartner, both of New York City, and William F. Stotz, of Philadelphia, Pa., of counsel), for appellant.

R. F. Whitehead, of Washington, D. C. (Howard S. Miller, of Washington, D. C., of counsel), for Commissioner of Patents.

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges.

BLAND, Associate Judge.

The Primary Examiner of the United States Patent Office rejected all the appealed claims in the appellant's application for the reissue of a patent No. 1,788,569 of January 13, 1931, relating to refining viscous mineral oils. The first eighteen claims of the patent stand allowed in the application. Upon appeal to the Board of. Appeals, the decision of the Examiner was affirmed upon substantially the same grounds as those assigned by the Examiner. From the decision of the Board, appellant has here appealed.

The invention which is covered by the patent involves the use of aromatic nitro compounds as a selective solvent in the treatment of lubricating oils to produce fractions which differ therefrom in character in that one fraction is more paraffinic and the other more napthenic than the original oil. Each of the patent claims calls for the use of nitrobenzene as a solvent, but the specification of the patent states that this term is employed in a generic sense to include that material and equivalent aromatic nitro compounds or mixtures of them.

The purpose of the invention disclosed in the patent and of the invention which appellant claims in the appealed rejected claims is to obtain from an Appalachian crude oil and crude oils of the mixed base type from the mid-continent area an oil which may normally be obtained from the napthenic oils from the Gulf Coast area. The claims also call for the production of an oil such as is normally obtained by distillation of Pennsylvania crudes. The original patent can hardly be said to teach that a paraffinic oil such as can be obtained from Pennsylvania oil may be obtained by the process recited.

Claims 19 to 37 were rejected by the tribunals as being broader than the disclosure in the patent, since the rejected claims call for the use of a solvent broadly and are not limited to the use of aromatic nitro compounds. Claims 19, 20, 31, 32, 33, 34, 35, and 36 were additionally rejected as being directly anticipated by certain patents. Some of these patents disclose the

use of aniline as a selective solvent for petroleum distillates. Others show that isopropyl alcohol or liquid sulfur dioxide are used for this purpose. It is stated by the Examiner that each of these solvents is known to possess selective solvent properties for the nonparaffinic type of hydrocarbons. Claims 21 to 31, and claim 37, were further rejected for failing to distinguish patentably from references which showed the use of selective solvents for separating the saturated from the unsaturated and aromatic constituents of mineral oils. Claims 19 to 37 were further rejected as failing to distinguish patentably from certain publications.

In view of our conclusion that we approve of the decision of the Board affirming that of the Examiner in rejecting the claims upon the ground that they are broader than the invention disclosed in appellant's patent and are based upon new matter, it will not be necessary for us to discuss the other grounds of rejection or to set out or discuss the references further than is above noted.

The appeal as to claim 31 was withdrawn in this court, and therefore it is not before us for consideration.

Claim 19 was regarded as illustrative of the appealed claims by the Board and it follows: "19. In the art of refining viscous mineral oils, the process which comprises bringing a solvent into intimate contact with a viscous hydrocarbon oil of a quality other than that of a Pennsylvania type viscous oil, and containing paraffinic and naphthenic components, thereby to dissolve from the oil substantial amounts of its naphthenic components, thereafter removing the solvent plus the portion of the oil which dissolves therein from the portion of the oil which remains undissolved, thereby to produce an oil such as is normally obtained from Pennsylvania type crudes by distillation."

The Examiner has gone into a discussion of the original disclosure at great length, which is summarized as follows by the Board:

" * * * The examiner calls attention to certain portions of the specification which in his opinion involve new matter.

"The invention disclosed in the patent relates to the use of an aromatic nitro compound as a selective solvent in the treatment of lubricating oils to produce fractions which differ therefrom in character in that one fraction is more paraffinic and the other more naphthenic than the original oil. Each of the claims of the patent specifies nitrobenzene as the solvent but the specification of the patent states that this term is employed in a generic sense to include that material and equivalent aromatic nitro compounds or mixtures of them. The patent further discloses that it is possible to produce an oil of the quality normally obtained from Appalachian crudes, from crudes of the mixed base type from the mid-continent area and conversely to obtain oils from mixed base crudes such as are normally obtained from the naphthenic oils from the Gulf Coast area. It does not, however, fairly teach that paraffinic oils equivalent to Pennsylvania oils may be obtained from any source whatsoever.

"The specific data incorporated in the specification relating to viscosity-gravity constant may serve conveniently applicant's purpose of drafting shorter claims by reference to the constant values included in some of the claims, but we are constrained to agree with the examiner that this disclosure goes beyond what may properly be introduced by the way of mere explanation in the reissue application without involving new matter. There is no suggestion in the patent that solvents other than those in the class mentioned therein would be suitable for applicant's purpose and accordingly the appealed claims not only involve new matter in a reissue in the sense that they are not for the same invention claimed or indicated in the patent as intended to be claimed, but they are broader than the disclosure in the patent to Ferris warrants."

It will be noticed that the claims call broadly for the step of bringing a solvent into intimate contact with the oil without mentioning the particular solvent employed. It seems to us that appellant's invention as taught in the patent was the use of nitrobenzene or its equivalent belonging to the group of nitro compounds or mixtures, and that appellant now seeks to acquire a patent with claims which involve the use of any kind of solvent which would do the work, regardless of whether or not it is of the type disclosed. The appealed claims themselves are so broad in calling for a solvent as to amount to asking a monopoly on treating oils for the purposes stated with any material which has a solvent characteristic. The claims are really so broad that they state only the desired result and say that it can be done with a solvent.

We agree with the tribunals that this broad alleged invention was not disclosed in the patent and that the insertion in the specification of the matter pointed out by the Examiner, but too lengthy to quote here, which was inserted into the specification in the reissue application, was more than an explanation or amplification of his original invention and was more than a mere variance in the description of the material found therein. It must be remembered that the disclosure contemplated the use as a solvent of only aromatic nitro compounds or mixtures of them, and the claims specifically call for only one of such type—nitrobenzene. There was no suggestion in the patent that any other kind of solvent might be used. We are in agreement with the tribunals that the appellant is not entitled to broaden the field of the solvents beyond those disclosed or their equivalents. It is not contended by appellant, as we understand his position, that he is claiming here merely the equivalents of those disclosed, but it is his contention in substance that he disclosed the use of a solvent for the particular purposes stated and that he is entitled to broadly claim all solvents that will do the work.

In equity the law is well settled "that an inventor is entitled to a range of equivalents commensurate with the scope of his invention." Walker on Patents (6th Ed.) § 416. As to whether or not a patent may reissue for the purpose of claiming known equivalents we are not called upon to decide nor do we think it necessary to enter into a lengthy discussion of the law as to what constitutes known equivalents in a case like the one at bar. It is interesting, however, to note that in Walker, supra, § 399, is found the following: "* * * Precisely what constitutes equivalency, as between acts, has never been decided or stated by the Supreme Court. Reason seems to indicate that one act is the equivalent of another when it works in substantially the same way to accomplish the same result. Accordingly, it has been held that damping oil wells with benzine is equivalent to damping them with water in respect of the series of acts which constitute the process covered by the Roberts torpedo patent," citing Roberts v. Roter (1872) Fed.Cas.No.11,912, 5 Fish.Pat.Cas. 295, 296.

Concerning what claims may be allowed in a reissue patent, the following statement from Robinson on Patents, vol. 2, § 673, is quite pertinent: "* * * A patent for a specific invention cannot reissue to embrace the generic, for these are not only distinct inventions, but as the genus covers all possible species, the re-issue would indefinitely extend the scope of the original patent beyond the invention which it first attempted to protect. * * *"

In support of the above-quoted language Ex parte Waters (1875) 8 O.G. 399, is cited.

Appellant's argument here with reference to his right to claim broadly a solvent to be used as the claim calls for may be summed up in the following language quoted from his brief:

"Under the law, the applicant was entitled to make claims as broad as his invention. Actually there are two aspects of the invention and in the original patent Ferris claimed only one.

"The aspect which he originally claimed, and to which the Patent Office still limits him, is the treatment of oil containing naphthenic and paraffinic hydrocarbons with nitrobenzene. He has claimed that broadly and without limitation to the sources of crude or to the kind of change—change in type—in the fractions produced. * * *

"But all of these allowed claims are limited to the use of 'nitrobenzene' as expressive of the particular group of solvents specified in the patent.

"Unless by law Ferris is limited to that definition of solvents, and we propose to show now that he is not, he is also entitled to claim his solvent more broadly provided his new claims clearly define the essential properties of the solvent and the resulting change in type or kind of the fraction produced."

The difficulty with this position is that the appealed claims describe the characteristics of the solvent only in terms which amount to the result of its use or the solution of the problem, while in his original disclosure he definitely stated what particular type of solvent did the work.

Again, appellant in his brief states: "If the original claims were not so plainly limited they might well be broadly construed to include equivalent solvents which are now being used by some refiners to achieve precisely the same new result by the same new mode of operation. But correction of the mistake by reissue is a fairer and more certain remedy both to the patentee and the

public than that of awaiting judicial construction. And in circumstances such as here presented, it is a remedy, we submit, which should be liberally applied."

The Solicitor for the Patent Office, in answer to this statement, states that of course appellant, having named more than one solvent in his original application, should not be limited in his patent protection to but one solvent and then argues: "* * * However, assuming that appellant might have been entitled in his original patent to claims which were broad enough to include all the solvents which he disclosed and their equivalents and assuming further, merely for the purpose of argument, that appellant might reissue his patent to secure claims broad enough to include all the originally mentioned solvents and their equivalents, it does not follow that appellant is entitled to the appealed claims."

The Solicitor then points out that appellant has broadened his claims to the extent that the Examiner has held in the instant case that they include solvents which were not originally taught by appellant and when so broadened do not avoid the prior art references.

The appeal as to claim 31 is dismissed. After carefully considering appellant's two briefs and his argument before us, we are not convinced that the Board was in error in affirming the Examiner in rejecting the claims before us upon the ground which we have hereinbefore approved, and its decision is affirmed.

Affirmed.